# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-05-00395-CR

**The State of Texas, Appellant**

**v.**

**Billy Moore, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. 679565, HONORABLE ELISABETH EARLE, JUDGE PRESIDING

## O P I N I O N

A jury found appellee Billy Moore guilty of driving while intoxicated, for which the court imposed a 100-day term of incarceration. *See* Tex. Penal Code Ann. § 49.04 (West 2003). The trial court later granted Moore's second amended motion for new trial on the ground that the State failed to disclose material evidence to the defense. On original submission, we reversed the order on procedural grounds. *State v. Moore*, No. 03-05-00395-CR, 2006 Tex. App. LEXIS 518, at *4 (Tex. App.—Austin Jan. 19, 2006) (mem. op., not designated for publication). Moore successfully challenged this ruling in a petition for discretionary review, and the court of criminal appeals remanded the cause to us to consider the merits of the State's challenge to the trial court's order. *See*

*State v. Moore*, No. PD-0359-06, 2007 Tex. Crim. App. LEXIS 696 at *44 (Tex. Crim. App. June 6, 2007). We will again reverse the order.

Austin police officer Lance McConnell and his partner were in the process of issuing a traffic citation at about 1:00 a.m. on September 4, 2004, when they were passed by a vehicle from which loud, amplified music could be heard. Believing that the driver of this vehicle was violating the city's noise ordinance, McConnell followed the vehicle in his patrol car with his emergency lights activated. The driver of the suspect vehicle, who was Moore, apparently did not notice the officer. Moore stopped outside a nightclub, got out of his vehicle, and began to walk into the club. McConnell detained him before he got inside. McConnell testified that Moore's breath smelled of alcoholic beverage, his eyes were bloodshot and glassy, and he leaned against his vehicle for balance. McConnell called for a DWI enforcement officer. That officer, Jane Pacifico, testified that she administered the standard field sobriety tests and that Moore failed them. Based on this testimony, the jury convicted Moore of driving while intoxicated.

In his second amended motion for new trial, Moore asserted that the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the existence of an investigation by the Texas Attorney General into McConnell's alleged possession and promotion of child pornography that was ongoing at the time of Moore's trial.[1] Moore conceded that evidence of McConnell's alleged unlawful activities was not admissible to show bad character for truthfulness, but he urged that he could have used the existence of the investigation to impeach

---

[1] Moore also challenged the constitutionality of the city noise ordinance on which the stop was based.

2

McConnell's testimony on the theory that he was seeking to curry favor with the prosecutors and thereby avoid prosecution by testifying favorably to the State. *See* Tex. R. Evid. 608(b), 613(b).

Documents attached to the motion and admitted at the hearing reflect that in December 2004, McConnell's internet service provider notified the National Center for Missing and Exploited Children that one of its accounts had been used to email child pornography. The center notified the Dallas police, who in turn notified the attorney general's cyber crimes office. The documents do not reflect when investigators identified McConnell as the owner of the account or learned that he was a police officer. On March 23, 2005, the day after Moore's trial ended, officers executed a search warrant at McConnell's residence in Caldwell County and seized his computer.[2] A large quantity of child pornography was found on the hard drive. On May 17, a federal indictment was filed accusing McConnell of receiving, possessing, and transporting child pornography. It is undisputed that the prosecutors at Moore's trial were unaware of the investigation into McConnell's activities.

At the new trial hearing, the court interrupted Moore's presentation regarding the alleged unconstitutionality of the noise ordinance to announce, "I'm granting the Motion for New Trial on the basis of Detective McConnell and we're not dealing with the other issue at this point in time." When the prosecutor asserted a lack of knowledge, Moore's counsel urged that knowledge of an investigation by another law enforcement agency was imputable to the prosecutors. The court expressed the view that the prosecutors could have learned of the investigation had they run a

---

[2] There is no suggestion in the record or the arguments that the timing of the search relative to Moore's trial was anything other than a coincidence.

3

criminal background check on McConnell before calling him as a witness. The court stated, "The point is that under the situation, the defense should have been at least told about this so it could have been dealt with outside the presence of the jury at the time of trial. That's why the Motion for New Trial is granted."

We review a trial court's decision to grant a motion for new trial for an abuse of discretion. *State v. Read*, 965 S.W.2d 74, 77 (Tex. App.—Austin 1998, no pet.). An abuse of discretion occurs when the trial court's decision was arbitrary or unreasonable, without reference to any guiding rules or principles. *Id*. at 77-78. We will affirm the trial court's action if it is correct on any theory of law applicable to the case and supported by the record. *Id*. at 77.

Under *Brady*, a prosecutor has an affirmative duty to turn over material, exculpatory evidence. 373 U.S. at 87. Exculpatory evidence includes impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceedings would have been different. *Id*. at 682. The State argues that there was no *Brady* violation at Moore's trial because the prosecutors were unaware of the attorney general's investigation, the existence of the investigation was not impeachment evidence under the circumstances, and the existence of the investigation was not material.

The duty to disclose under *Brady* arose only if the prosecutors or other members of the "prosecuting team" knew of the investigation or had access to the information. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990); *Ex parte Brandley*, 781 S.W.2d 886, 892 n.7 (Tex. Crim. App. 1989). Prosecutors have a duty to learn of any evidence favorable to the

4

defense that is known to others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Although the Texas Attorney General may conduct investigations into criminal activities, the office is not a prosecuting agency and exercises no authority or control over local prosecutors so as to be considered a part of the "prosecution team" generally. *See Saldano v. State*, 70 S.W.3d 873, 876, 880 (Tex. Crim. App. 2002) (holding that authority to prosecute criminal cases is given to county attorneys, criminal district attorneys, and district attorneys; attorney general has no authority to initiate prosecution at any level of state court). As for this particular case, there is no evidence that the attorney general's investigators who were conducting the child pornography inquiry were involved in or knew about Moore's DWI prosecution, nor is there any evidence that Austin or Travis County law enforcement officers or prosecutors were involved in or knew about the attorney general's investigation into McConnell's activities.

On this record, there is no basis for imputing to the Travis County prosecutors any knowledge of the attorney general's investigation into McConnell's improper activities or for faulting them for having failed to discover the existence of the investigation before Moore's trial. *See Shanks v. State*, 13 S.W.3d 83, 86 (Tex. App.—Texarkana 2000, no pet.) (holding that prosecutors at trial for assaulting prison guard had no duty to learn that guard's supervisor, a witness at trial, had been disciplined for use of excessive force by department of criminal justice). Moore refers us to several federal circuit court opinions holding that prosecutors had a duty to search for impeachment evidence, but as Moore states in his brief, these cases involved searches of files maintained by branches of government "closely aligned with the prosecution." *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (1985). Moore cites no authority holding that prosecutors must

search the files of government agencies generally, including those uninvolved in and unrelated to the prosecution, for evidence that might have impeachment value to the defense. There is also no evidence warranting an inference that a routine criminal background check would have disclosed the existence of the ongoing McConnell investigation which at the time of Moore's trial had not resulted in an arrest or the filing of charges.

Setting aside the question whether the prosecutors should have known of the investigation into McConnell's activities, the record does not support a finding that the existence of the investigation was impeachment evidence or otherwise material to Moore's defense. There is no evidence that McConnell knew that he was being investigated for possession of child pornography at the time he testified at Moore's trial. Moore's argument that the existence of the investigation could have been used to impeach McConnell for bias is unpersuasive absent any basis for inferring that McConnell was aware of the investigation and thus had a motive to curry favor with the prosecutors. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). Even if the existence of the investigation had been discovered by the prosecutors and disclosed to Moore outside the jury's presence, it would have had no value as impeachment so long as McConnell remained unaware of it. Thus, there is no basis for concluding that the outcome of Moore's trial would have been different had the existence of the investigation been disclosed to the defense.

By the time that Moore filed his amended motion for new trial, McConnell's alleged unlawful activities were a matter of public knowledge. A new trial must be granted when material evidence favorable to the accused is discovered after trial. *See* Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006). Under article 40.001, newly discovered evidence is not material if it is merely

6

impeaching. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Delamora v. State*, 128 S.W.3d 344, 354 (Tex. App.—Austin 2004, pet. ref'd). The evidence regarding McConnell's involvement in child pornography was at most impeaching and thus not material evidence entitling Moore to a new trial under article 40.001.

Moore argues that regardless of whether a *Brady* violation was shown or newly discovered evidence was presented, the trial court was authorized to grant a new trial in the interest of justice. *See State v. Gonzalez*, 855 S.W.2d 692, 693-94 (Tex. Crim. App. 1993). The court of criminal appeals recently observed that a trial court's discretion to grant a new trial in the interest of justice is not "unbounded or unfettered." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). The court wrote:

> A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. He cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or "received a raw deal." . . . Although not all of the grounds for which a trial court may grant a motion for new trial need be listed in statute or rule, the trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law. To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion.

*Id*. As a general rule, a trial court will not abuse its discretion in granting a motion for new trial if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the rules of appellate procedure. *Id*. at 909; *see* Tex. R. App. P. 44.2.

> The defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial. On the other

7

hand, trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial.

*Herndon*, 215 S.W.3d at 909.

Moore articulated valid legal claims in his amended motion for new trial: a *Brady* violation and, more broadly, the denial of an opportunity to impeach a State witness with evidence of bias. But as we have discussed, Moore did not produce evidence to substantiate these claims. There is no evidence that the prosecutors knew or should have known about the investigation into McConnell's involvement in child pornography, and thus no evidence of a *Brady* violation. And there is no evidence that McConnell knew about the investigation, and thus there is no evidence that he had a reason to be biased in favor of the State or that Moore's impeachment right was prejudiced.

Moore argues that it was the State's obligation to make a record establishing an abuse of discretion, citing the court of criminal appeals's observation that "[a]n appellate court should not fault a trial judge for granting a motion for new trial when the State fails to provide an appellate record establishing an abuse of discretion." *Gonzalez*, 855 S.W.2d at 695. In *Gonzalez*, the court determined that the evidence presented by the defendant was sufficient to justify the grant of a new trial and it was the State's burden to controvert it. In the instant cause, on the other hand, Moore did not present evidence that substantiated his legal claim to a new trial. *See Herndon*, 215 S.W.3d at 909.

Viewing the evidence adduced in support of the motion for new trial in the light most favorable to the trial court's ruling, we must conclude that Moore failed to demonstrate that his trial

8

was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. We hold that the trial court abused its discretion by granting the amended motion for new trial.

The order granting a new trial is reversed and the cause is remanded to the trial court.


_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Reversed and Remanded on Remand

Filed:   August 3, 2007

Publish

9