

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00110-CR

_____

THE STATE OF TEXAS, Appellant

V.

MAURICE SCOTT FERGUSON, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 09-0204X

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

During the jury trial resulting in the conviction of Maurice Scott Ferguson for aggravated sexual assault, the alleged victim testified that Ferguson regularly engaged in vaginal sexual intercourse with her after school for at least three years, while she was between roughly eight and eleven years of age.   In contrast, Ferguson has consistently maintained that he had never had sex with her.   The trial court granted Ferguson a new trial, in response to Ferguson's motion, which claimed that the State improperly and harmfully failed to turn over a forensic sexual assault examination report which stated (1) that the labia majora, labia minora, and hymen of the complainant child was within normal limits, (2) that the perineum of the complainant child was within normal limits and "intact," and (3) in summary, that the genital examination of the then thirteen-year-old complainant child was within normal limits—a report at least arguably tending to undermine the complainant's testimony that she had been subjected to vaginal[1] intercourse regularly for more than three years and at least arguably tending to support Ferguson's claim of no such intercourse.   The State appeals the trial court's new-trial order.   We affirm the trial court's order, because granting a new trial was within the discretion of the trial court.

The granting or denying of a motion for new trial lies within the discretion of the trial court. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).   An appellate court reviews a trial

---

[1]This opinion focuses on the alleged vaginal intercourse, because the complainant's testimony appears to principally allege vaginal intercourse and because that act seems central to this appeal in light of the various elements set out by the sexual assault examination report in issue.  It is acknowledged that the record contains some testimony also suggesting anal intercourse, but that is not central to this appeal.

2

court's ruling on a motion for mistrial and motion for new trial using an abuse of discretion standard of review. We view the evidence in the light most favorable to the trial court's ruling and uphold it if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). A trial court does not abuse its discretion in granting a motion for new trial if the defendant (1) articulated a valid legal claim in his or her motion, (2) produced evidence or pointed to evidence in the trial record that substantiated the legal claim, and (3) showed prejudice to his or her substantial rights under the Texas Rules of Appellate Procedure. *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007); *see* TEX. R. APP. P. 44.2.

Applying this analysis, a defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion to grant a motion for new trial. On the other hand, trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that the first trial was seriously flawed and that the flaws adversely affected the defendant's substantial rights to a fair trial. *Id.*

The dispute here revolves around a Sexual Assault Examination Forensic Report Form completed by Donna Whipkey, R.N., at Good Shepherd Medical Center in Longview. That report was not provided to defense counsel, and evidently was also not in the hands of the State, but instead was possessed by one of the county's investigative bodies. The trial court found that the State did not intentionally withhold the report and that the report was material to the defense of the charges against Ferguson. The court further explicitly found that Ferguson did not waive the

3

*Brady* claim and that there was no lack of diligence relating to a failure to discover the new evidence.

There are two different analyses at play, based on the two different arguments of legal error presented to the trial court. One is a *Brady* analysis; the other the statutory analysis due to "newly discovered evidence." Those arguments overlap, but are based on different theories of law. Each analysis, in our view, supports the trial court's granting a new trial.

*(1)* <u>*Brady* Analysis</u>

*Brady v. Maryland*, 373 U.S. 83, 87–88 (1963), imposes an affirmative duty on the State to disclose evidence favorable and material to a defendant's guilt or punishment under the Due Process Clause of the Fourteenth Amendment. *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992); *Smith v. State*, 314 S.W.3d 576, 584 (Tex. App.—Texarkana 2010, no pet.). A defendant is entitled to a new trial if (1) the State fails to disclose evidence, (2) the evidence is favorable to the accused, and (3) "the evidence is material, that is, there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

In executing their duties, prosecutors have a duty to learn of any evidence favorable to the defense that is known to others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *State v. Moore*, 240 S.W.3d 324, 328 (Tex.

4

App.—Austin 2007, pet. ref'd).

As previously stated, a defendant is entitled to a new trial if (1) the State fails to disclose evidence, (2) the evidence is favorable to the accused, and (3) "the evidence is material, that is, there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed." *Bagley*, 473 U.S. at 682; *Hampton*, 86 S.W.3d at 612. The evidence was undisclosed. It is apparent from the testimony at the hearing on new trial that it was favorable to the accused. The closest question is whether the evidence creates a probability sufficient to undermine the confidence in the outcome of the proceeding—that is, was there a reasonable probability that the outcome would have been different if the evidence had been disclosed.

The State first argues that the issue was waived below, thus the trial court could not properly consider it in the motion for new trial. Therefore, the State contends, for the court to grant a new trial in the face of the defendant's waiver of the theories that would justify its granting makes its decision arbitrary and unreasonable. Its initial argument is based on *State v. Fury*, 186 S.W.3d 67, 73 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), where the court held that a failure to request a continuance waived *Brady* error. In that case, however, the existence of the undisclosed evidence was definitely known by the defendant: it was admitted at trial with no objection, complaint or request for continuance by the defendant.

5

The State suggests that this case is in the same position because counsel learned during the course of the trial that a S.A.N.E. examination was performed, and it ultimately became clear that the sheriff's office had a report generated as a result of the examination. The State argues that counsel made a decision not to seek a postponement in order to look into the matter, and points out that counsel decided not to call the S.A.N.E. as a witness—suggesting that this decision waived any later complaint about anything that could have been discovered through questioning that witness.[2]

The evidence adduced at the hearing on the motion for new trial is revealing. The evidence shows that defense counsel learned of the *examination* during the course of the trial. It also shows that the sheriff's office had the report produced from that examination. However, it also shows that defense counsel was unaware that a *report* existed at all, until after trial concluded. Therefore, in support of its contention that counsel waived his arguments, the State is in the position of arguing that counsel necessarily knew or should have known that a report existed because an examination occurred. That is not a necessary inference. It can be argued that reports are often, perhaps even usually, produced in connection with physical examinations. However, it cannot be said that reports are always made. Further, in light of the State's duty both constitutionally and pursuant to order of the trial court to produce such a report if it did exist, the fact that the State did not produce a report allows counsel to justifiably infer that one did not exist.

_____

[2]Defendant's trial counsel (who is now the elected district attorney of Harrison County) testified that he—quite reasonably—declined to call the nurse because he did not know the report existed, and thus had no knowledge of the likely answers to his questions. We cannot fault him for that decision.

This appeal is therefore not governed by *Fury*, where there was no question that the evidence existed.

There is a significant difference between the testimony at trial and the content of the report as later explained by the S.A.N.E. in the hearing on the motion for new trial. The trial testimony was that there was no physical injury apparent, while the report and testimony at the hearing on the motion for new trial reflected evidence that the complainant's genitalia were found to be "within normal limits." The report might be argued and understood as affirmative evidence that the complainant was not regularly subjected to vaginal intercourse over approximately three years, as charged by the State.

The State also argues that, with use of the report on a retrial, a different outcome was not likely, because the State had admitted from the inception of the trial that it had no direct physical evidence and was relying solely on the testimony of the complainant. The State introduced testimony at trial pointing out that, during the examination of the child, no genital scarring was found, and stating that the part of the body involved—the vagina, claimed in this instance—healed quickly unless it "is a terrible brutal, brutal assault." On cross-examination, defense counsel commented, and the investigator agreed, that, as no sign of scarring, tearing, or DNA was apparent, the examination simply indicated that there was no physical evidence of injury that could be linked back to an act. The lack of scarring was also pointed out during final argument. The

State argues generally that the undisclosed evidence was at best cumulative, and alternatively that trial counsel waived the complaint under both theories by not requesting a continuance at trial—thus, the decision was therefore arbitrary or unreasonable, and the trial court, therefore, abused its discretion by granting the new trial.

In fact, at the hearing on new trial, while on the stand, defense counsel testified that, had the report been in his hands, his defensive strategy would have changed noticeably—shifting from the defensive argument used—that there was no physical evidence of sexual assault—to a more offensive argument—that there was physical evidence strongly suggesting that there was no sexual assault, or at least that the regularity reported by complainant was incredible. That is a substantial and supportable distinction.

Undisputed evidence shows that counsel did not know the document existed until after trial. Further, cases have not focused on a "should have known" scenario, except when the document was provided to counsel, but then ignored—or when it was otherwise made available. *See and compare*, *Dalbosco v. State*, 960 S.W.2d 901, 903 (Tex. App.—Texarkana 1997, order). Even then, the argument is actually based on an alleged lack of diligence by counsel, and in light of counsel's actions, the trial court was within its discretion in finding that counsel diligently sought information that was solely under the control of the State.

Counsel's argument is persuasive. The undisclosed evidence does not conclusively prove innocence, but it does make a defensive theory legitimately available, based on physical evidence.

8

That theory would have had no grounding other than supposition before the evidence became available. Thus, because the trial court had evidence on which it could have relied, it did not abuse its discretion in determining that a *Brady* violation existed that would justify the granting of a new trial.

*(2)     Newly-Discovered-Evidence Analysis*

The other relevant analysis involves allegedly newly discovered evidence. "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (Vernon 2006); *Keeter v. State*, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002); *Fury*, 186 S.W.3d at 73. Before a defendant is entitled to a new trial because of newly discovered evidence, he or she must show that (1) the newly discovered evidence was unknown to the defendant at the time of trial; (2) the failure to discover the evidence was not due to lack of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Keeter*, 74 S.W.3d at 36–37; *Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994); *Tuffiash v. State*, 948 S.W.2d 873, 879 (Tex. App.—San Antonio 1997, pet. ref'd). It is the purview of the trial court to determine the credibility of the witnesses and whether the new evidence is probably true. *Keeter*, 74 S.W.3d at 37.

The report itself was unknown to Ferguson and in the hands of the State, counsel obtained an order requiring that evidence of this type be provided to him, the report would be admissible,

9

and it is substantially different in content from the evidence at trial. The remaining question—whether it would probably bring about a different result in another trial—is the closer question. The standard here, a probable difference, is higher than the *Brady* standard, requiring only a reasonable probability of a different outcome.

The evidence and its implications are discussed under our *Brady* analysis, and the same considerations apply in this analysis. In this review, we find that the evidence supporting the trial court's conclusion that the requirements for reversal based on newly discovered evidence have been met is unclear. Under an abuse of discretion standard, however, and in light of the trial court's ability to process and consider the credibility of the witnesses involved, we do not conclude that the trial court acted without reference to applicable law. Therefore, reviewing the evidence in the light most favorable to the trial court's ruling,[3] we find that ruling to be within the zone of reasonable disagreement.

We affirm the order of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted: January 18, 2011
Date Decided: February 4, 2011

---

[3]*Webb*, 232 S.W.3d at 112.