

## KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

January 27, 2025

The Honorable Phil Sorrells
Tarrant County Criminal District Attorney
401 West Belknap
Fort Worth, Texas 76196

      **Opinion No. KP-0478**

      Re:     Applicability of article 39.14 of the Code of Criminal Procedure to third-party records in the possession of the local juvenile justice agency and used in support of its social history report to the juvenile court (RQ-0532-KP)

Dear Mr. Sorrells:

      You generally ask about access to certain records used by Tarrant County Juvenile Services ("Juvenile Services"), a local juvenile probation department, to prepare social history reports for a juvenile court's consideration during a disposition hearing for delinquent conduct.[1] You describe an instance in which the attorney for a child subject to such a hearing sought disclosure from the prosecuting attorney under Code of Criminal Procedure article 39.14 of "any and all records relied upon by Juvenile Services" to create the social history report. Request Letter at 2; *see* TEX. CODE CRIM. PROC. art. 39.14 ("Discovery"). Given your belief that this scenario "is likely to recur," you ask two specific questions. Request Letter at 2. First, you inquire whether article 39.14 requires that Juvenile Services "provide records in its possession" to the juvenile prosecuting attorney for disclosure to the child's attorney.[2] *Id.* Second, you ask generally about the "role of the juvenile court in the handling of privileged and confidential information." *Id.* We begin by reviewing the statutory framework relevant to your request.

---

[1] *See* Letter and attached Brief from Hon. Phil Sorrells, Tarrant Cnty. Crim. Dist. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 2 (Feb. 15, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0532KP.pdf ("Request Letter" and "Brief," respectively).

[2] Given this phrasing, we assume your first question only pertains to records that have not been appended to, or otherwise provided along with, the social history report itself and thus limit our analysis accordingly.

**At a disposition hearing for a child that engaged in delinquent conduct, a juvenile court may consider a social history report prepared by a juvenile probation officer.**

In Tarrant County, the juvenile board[3] is composed of the county judge and the district judges in the county. TEX. HUM. RES. CODE § 152.2261(a). The chief juvenile probation officer may serve as the board's secretary. *Id.* § 152.2261(b). The board "prepare[s] a budget for the juvenile probation department and the other facilities and programs under the jurisdiction of the juvenile board." *Id.* § 152.0012. With the advice and consent of the commissioners court, the board may employ probation officers or other personnel necessary to provide "juvenile probation services." *Id.* § 142.002(a); *see also id.* § 142.001 (defining "juvenile probation services"). Relevant here, certified juvenile probation officers provide "final approval of written social history reports." 37 TEX. ADMIN. CODE § 341.400(a)(2).

Juvenile courts consider social history reports in various types of proceedings conducted under chapter 54 of the Family Code. *See generally* TEX. FAM. CODE §§ 54.01–.11 ("Judicial Proceedings"). For example, a court "may consider written reports from probation officers" in detention hearings, transfer hearings, and hearings to modify disposition. *Id.* §§ 54.01(c), .02(e), .05(e). Chapter 54 also governs judicial proceedings where a prosecuting attorney files charges against a child for engaging in "delinquent conduct"[4] and sets forth separate phases for adjudication (trial) and disposition (sentencing). *Id.* §§ 54.03, .04. "A child may be found to have engaged in delinquent conduct . . . only after an adjudication hearing conducted in accordance with" Family Code section 54.03. *Id.* § 54.03(a). Upon such a finding, the juvenile court must set a disposition hearing, which is "separate, distinct, and subsequent to the adjudication hearing." *Id.* §§ 54.03(h), .04(a).

Relevant here, social history reports or "predisposition reports" are prepared for the juvenile court's use at a disposition hearing as authorized by Family Code subsection 54.04(b). *Compare In re A.F.*, 895 S.W.2d 481, 484 (Tex. App.—Austin 1995, no writ) (observing that "the social history report" was "introduced pursuant to Family Code section 54.04(b)"), *with In re C.E.*, No. 03-05-00495-CV, 2007 WL 2274836, at *4 (Tex. App.—Austin Aug. 9, 2007, no pet.) (mem. op.) (citing subsection 54.04(b) to conclude that "[i]n reaching its disposition, the court was entitled to consider the juvenile probation department's predisposition report"). In full, subsection 54.04(b) provides the following:

> (b) At the disposition hearing, the juvenile court, notwithstanding the Texas Rules of Evidence or Chapter 37, Code of Criminal Procedure, *may consider written reports from probation officers*, professional court employees, guardians ad litem appointed under Section 51.11(d), or professional consultants in addition to the

---

[3] Subchapter A of Human Resources Code chapter 152 generally governs juvenile boards. *See* TEX. HUM. RES. CODE §§ 152.0001–.0017 ("General Provisions"). However, the juvenile board in Tarrant County is not subject to many of these general provisions. *See id.* § 152.2261(h) ("Sections 152.0002, 152.0004, 152.0005, 152.0006, 152.0007, and 152.0008(a) do not apply to the juvenile board of Tarrant County.").

[4] The term "delinquent conduct" is statutorily defined. *See* TEX. FAM. CODE § 51.03(a). Juvenile courts have exclusive original jurisdiction over all proceedings held under Title 3 of the Family Code that involve delinquent conduct. *Id.* § 51.04(a).

> testimony of witnesses. On or before the second day before the date of the disposition hearing, the court shall provide the attorney for the child and the prosecuting attorney with access to all written matter to be considered by the court in disposition. The court may order counsel not to reveal items to the child or the child's parent, guardian, or guardian ad litem if such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future.

TEX. FAM. CODE § 54.04(b) (emphasis added); *see also id.* § 54.03(d) (providing that, with certain exceptions not relevant here, "a social history report . . . shall not be viewed by the court before the adjudication decision"). While subsection 54.04(b) does not directly impose an obligation on probation officers to prepare social history reports, at least one court of appeals has observed that "such reports have been required for the disposition phase of juvenile delinquency proceedings since at least 1973." *In re M.P.*, 220 S.W.3d 99, 112 (Tex. App.—Waco 2007, pet. denied).

Substantively, social history reports are "very similar to the presentence investigation report required in most felony cases." *Id.* No statute prescribes the exact contents of a social history report. *See In re A.F.*, 895 S.W.2d at 485 ("There appears to be no authority limiting the content of reports envisioned by section 54.04(b)."). However, the reports commonly contain a description of the child's history with the juvenile justice system and background, statements from alleged victims, and psychological testing results. *See, e.g.*, *In re M.P.*, 220 S.W.3d at 100 (listing the contents of one report); *In re R.S.*, No. 02-22-00165-CV, 2022 WL 17494602, at *4 n.5 (Tex. App.—Fort Worth Dec. 8, 2022, no pet.) (mem. op.) (same); TEX. CODE CRIM. PROC. art. 62.351(b)(4) (listing some of "the contents of a social history report prepared by the juvenile probation department" that may be considered when determining whether a child is exempt from registering as a sex offender); 29 Thomas S. Morgana & Harold C. Gaither, Jr., *Texas Practice Series: Juvenile Law and Practice* § 13:6 (3d ed. 2024) (listing ten items that a juvenile probation department should include in a predisposition report). The report may also contain a recommendation to the juvenile court regarding disposition. *See In re M.P.*, 220 S.W.3d at 100; *In re N.T.*, No. 05-16-00821-CV, 2017 WL 4533798, at *1–2 (Tex. App.—Dallas Oct. 11, 2017, no pet.) (mem. op., not designated for publication). You explain that these reports are often based on "a totality of information" that "Juvenile Services has obtained throughout its work in providing services" to the child and typically are bereft of "a list of the sources of information or documents relied upon when preparing the report." Request Letter at 1. It is the underlying materials used by Juvenile Services to prepare social history reports but not provided to the juvenile court that form the basis for your first question about discovery obligations under Code of Criminal Procedure article 39.14.[5]

> **Juvenile Services is not "the state" for purposes of Code of Criminal Procedure article 39.14 and thus is not subject to disclosure duties on that basis.**

---

[5] Discovery in a proceeding under Title 3 of the Family Code "is governed by the Code of Criminal Procedure and by case decisions in criminal cases." TEX. FAM. CODE § 51.17(b).

We first consider whether article 39.14 directly imposes disclosure obligations on Juvenile Services. In 2013, the Legislature engaged in "an overhaul of discovery in Texas" with the passage of the Michael Morton Act ("Morton"),[6] which "revamped Article 39.14 completely." *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). Compared to its predecessor, "the current version of Article 39.14 removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose." *Id.* at 278. These "new, broader obligations . . . continue after conviction[.]" *Id.*

At least two portions of article 39.14—subsections (a) and (h)—are potentially implicated by your request and impose obligations on "the state" as follows:

> (a) Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this code, as soon as practicable after receiving a timely request from the defendant *the state* shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of *the state* or any person under contract with the state[7] . . . .

> (h) Notwithstanding any other provision of this article, *the state* shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of *the state* that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

---

[6] Act of May 14, 2013, 83d Leg., R.S., ch. 49, § 2, 2013 Tex. Gen. Laws 106, 106–08 (codified at TEX. CODE CRIM. PROC. art. 39.14).

[7] You inquire whether Juvenile Services constitutes "an entity 'under contract with the state . . . .'" Request Letter at 2. No court has construed the meaning of this phrase. Whether "under contract with the state" refers to the common meaning of the phrase or refers to an agency relationship, the answer to your inquiry depends on the resolution of facts. *Cf., e.g.*, *In re S.M.H.*, 523 S.W.3d 783, 795 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that the "determination of the existence of a contract is a question of fact for the finder of fact to decide"); *Wilkerson v. State*, 173 S.W.3d 521, 530–31 (Tex. Crim. App. 2005) (stating "courts must examine the entire record" to determine whether a governmental entity acts as an agent for law enforcement or the prosecution). As we do not determine facts in the opinion process, we construe article 39.14(a) only with regard to obligations imposed on "the state" itself. *See* Tex. Att'y Gen. Op. No. KP-0452 (2023) at 3 (explaining that questions that require the resolution of factual matters are "outside the purview of an Attorney General opinion").

TEX. CODE CRIM. PROC. art. 39.14(a), (h) (emphases and footnote added). Pursuant to article 39.14(h), "the State has an affirmative duty to disclose any relevant evidence that tends to negate guilt or mitigate punishment," even without a discovery request. *Watkins*, 619 S.W.3d at 277; *see also Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (recognizing that article 39.14(h) imposes an affirmative duty to produce exculpatory information "regardless of whether [the defendant] requested it"). Any remaining evidence held by the state is potentially subject to article 39.14(a), whereby it "must be disclosed upon request without any showing of 'good cause' or the need to secure a discretionary trial court order." *Watkins*, 619 S.W.3d at 277.

Whether Juvenile Services is subject to these discovery obligations depends first on whether it constitutes "the state." While that term "is capable of numerous definitions" depending on the context in which it is used, our office has observed that "the language and context of article 39.14(h) indicate the term 'state' has a limited scope." Tex. Att'y Gen. Op. No. KP-0055 (2016) at 2–3. This office opined that "a court would likely construe the term 'state,' as used in article 39.14(h), to mean the prosecution representing the State of Texas in criminal cases." *Id.* at 3. The same construction likely applies to "the state" for purposes of article 39.14(a). *See Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 384 n.7 (Tex. App.—Eastland 2013, no pet.) (stating that, when construing statutes, "a word or phrase is presumed to bear the same meaning throughout a text"). Since this office issued Opinion KP-0055, at least one court of appeals has also concluded that article 39.14's use of "the state" is meant "to describe the prosecution who is adverse to" a defendant. *Coleman v. State*, 577 S.W.3d 623, 634–35 n.6 (Tex. App.—Fort Worth 2019, no pet.). Indeed, the court in *Coleman* expressly declined to "use the term 'State' to describe all possible state actors, including courts, *departments*, or law enforcement officials[,]" finding this construction to be "consistent with cases that have analyzed similar Article 39.14 issues." *Id.* (emphasis added). Accordingly, a court would likely conclude that Juvenile Services is not part of "the state" that is required by article 39.14 to disclose documents to a child's attorney.

### Code of Criminal Procedure article 2A.209 does not require Juvenile Services to disclose documents underlying social history reports to the prosecution.

We next address whether article 39.14 indirectly imposes a duty on Juvenile Services to provide the underlying documents at issue to the prosecution. *See* Request Letter at 2. The brief appended to your request directs us to the pre-Morton case of *Valdez v. State*, which held that a prosecuting attorney "is answerable only for evidence in his direct possession or in the possession of law enforcement agencies." Brief at 4 (quoting *Valdez v. State*, 116 S.W.3d 94, 100 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd)). As you point out, some courts have continued to quote this statement in *Valdez* following the passage of Morton. *Id.*; *see, e.g.*, *Bennett v. State*, No. 03-21-00225-CR, 2022 WL 16973692, at *13 (Tex. App.—Austin Nov. 17, 2022, pet. ref'd) (mem. op., not designated for publication); *State v. Norwood*, No. 09-15-00083-CR, 2015 WL 5093332, at *1 (Tex. App.—Beaumont Aug. 31, 2015, pet. ref'd) (mem. op., not designated for

publication). In 2021, the Legislature clarified the "law enforcement agencies" that must provide the prosecution with article 39.14 materials.[8]

The Code of Criminal Procedure now provides:

> A law enforcement agency filing a case with the attorney representing the state shall submit to the attorney representing the state a written statement by an agency employee with knowledge of the case acknowledging that all documents, items, and information in the possession of the agency that are required to be disclosed to the defendant in the case under Article 39.14 have been disclosed to the attorney representing the state.

TEX. CODE CRIM. PROC. art. 2A.209(b). This express duty to submit a written statement implicitly requires a "law enforcement agency" to provide the prosecution with materials required to be disclosed under article 39.14. However, the term "[l]aw enforcement agency" specifically "means an agency of the state or an agency of a political subdivision of the state authorized by law to employ peace officers." *Id.* art. 2A.209(a)(2). For various reasons, Juvenile Services does not appear to meet this statutory definition.

The Code of Criminal Procedure does not list local juvenile probation department personnel as peace officers. *Id.* art. 2.12 ("Who Are Peace Officers"). Nor is there a specific authorization for such departments to employ peace officers. *See generally* TEX. HUM. RES. CODE §§ 142.001–.007 ("Juvenile Probation Departments and Personnel"); *see also* 37 TEX. ADMIN. CODE § 344.230 (providing that a peace officer "who is employed by or who reports directly to a law enforcement or prosecution official may not act as a chief administrative officer, facility administrator, juvenile probation officer, juvenile supervision officer, or community activities officer"). Furthermore, other Family Code provisions distinguish peace officers from juvenile probation officers or other employees of a juvenile probation department. *See, e.g.*, TEX. FAM. CODE §§ 61.107 (eschewing certain liability for "a peace officer" *or* "a juvenile probation department"), 52.0151(a) (providing that a court may direct or order "a peace officer *or* probation officer" to take certain actions (emphasis added)). To be sure, the Legislature may enact legislation obligating local juvenile probation departments, which have substantial responsibility over juvenile offenders, to provide the state with materials that implicate article 39.14. It may also, for example, amend the provisions discussed above to clarify these departments are authorized to act as law enforcement agencies or to hire peace officers. But absent such legislative changes, a court would likely conclude that Juvenile Services is not a "law enforcement agency" for purposes of article 2A.209 and thus is not required to disclose article 39.14 materials to the prosecution under that provision.

---

[8] Act of May 29, 2021, 87th Leg., R.S., ch. 509, § 1, 2021 Tex. Gen. Laws 1011, 1011 (formerly codified at TEX. CODE CRIM. PROC. art. 2.1397). A recent, non-substantive revision by the Eighty-eighth Legislature recodified this language in article 2A.209—as of January 1, 2025. Act of May 19, 2023, 88th Leg., R.S., ch. 765, §§ 1.001, 3.001(1), 4.003, 2023 Tex. Gen. Laws 1837, 1859 (codified at TEX. CODE CRIM. PROC. art. 2A.209).

**Determining whether Juvenile Services acts as part of the wider "prosecutorial team" for purposes of *Brady v. Maryland* is a fact-specific inquiry.**

While your question invokes article 39.14, your appended brief also discusses *Brady v. Maryland*, 373 U.S. 83 (1963). Brief at 4–5. That case pertains to the independent constitutional prohibition on withholding material, exculpatory evidence. *Brady*, 373 U.S. at 87. Applying this analysis to specific documents held by Juvenile Services involves fact questions, which are beyond the scope of an Attorney General opinion. What constitutes the "prosecutorial team" in relation to *Brady*, however, is a legal question for which we can provide guidance.

It is well established that "*Brady* has been extended to include the required revelation to an accused of material exculpatory evidence in the possession of police agencies and other parts of the 'prosecutorial team.'" *Ex parte Mitchell*, 977 S.W.2d 575, 578 (Tex. Crim. App. 1997) (en banc); *see also Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009) (stating that "[i]t is well settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors"). Under *Brady*, the prosecutorial team encompasses not only police, but "others acting on the government's behalf in the case." *State v. Moore*, 240 S.W.3d 324, 328 (Tex. App.—Austin 2007, pet. ref'd); *see also Avila*, 560 F.3d at 308 (recognizing that the prosecutorial team "includes both investigative and prosecutorial personnel" (quoting *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979))). Accordingly, Juvenile Services may be considered part of the "prosecutorial team" if its acts on behalf of the prosecution.

As related above, you indicate the documents in question were "obtained throughout [Juvenile Service's] work of providing services to the juvenile" rather than through the efforts of a prosecutorial team. Request Letter at 1; *see also* Brief at 7 ("The core mission of the Tarrant County Juvenile Services is service, not criminal prosecution."). Human Resources Code section 142.001 lists examples of the "services" typically provided by juvenile probation officers:

> In this chapter, "juvenile probation services" means:
>
> > (1) services provided by or under the direction of a juvenile probation officer in response to an order issued by a juvenile court and under the court's direction, including:
> >
> > > (A) protective services;
> > >
> > > (B) prevention of delinquent conduct and conduct indicating a need for supervision;
> > >
> > > (C) diversion;
> > >
> > > (D) deferred prosecution;
> > >
> > > (E) foster care;
> > >
> > > (F) counseling;

(G) supervision; and

(H) diagnostic, correctional, and educational services; and

(2) services provided by a juvenile probation department that are related to the operation of a preadjudication or post-adjudication juvenile facility.

TEX. HUM. RES. CODE § 142.001. While these functions oftentimes are divorced from investigating or adjudicating delinquent conduct, we cannot say as a matter of law that a juvenile probation department could never fulfill such a role.

Nevertheless, we note that federal courts frequently decline to find *Brady* violations where the information sought is held by a probation department. *See, e.g.*, *Dickens v. United States*, 163 A.3d 804, 815 n.6 (D.C. 2017) (collecting federal cases). For example, the First Circuit concluded that *Brady* does not extend to evidence "maintained by the probation officer" if "there is no evidence that the federal prosecutor or any agent working on the U.S. Attorney's behalf had this information prior to or during trial." *United States v. Rivera-Rodriguez*, 617 F.3d 581, 595 (1st Cir. 2010). The Tenth Circuit concluded that *Brady* does not require disclosure of evidence held by a probation department where "the probation service is an arm of the court" rather than "an investigative arm for the prosecution." *United States v. Dingle*, 546 F.2d 1378, 1380–81 (10th Cir. 1976). And the Fifth Circuit "decline[d] to extend *Brady*'s reach by holding that a discovery motion addressed in effect to a court or its probation officer, rather than the prosecution, . . . must be granted under *Brady*'s authority." *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977).

A prosecuting attorney's potential access to documents possessed by Juvenile Services does not change the analysis. Under Subchapter D of Family Code Chapter 58, both prosecuting attorneys and county juvenile probation departments are granted the highest level of access to documents stored in a local juvenile justice information system. TEX. FAM. CODE § 58.306(g)(2), (3). This generally includes information that "relates to a child who is alleged to have engaged in delinquent conduct."[9] *Id.* § 58.306(d). However, "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) (quoting *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)). Applying this well-established principle, one court of appeals held that *Brady* does not require prosecutors to independently conduct database searches on behalf of a defendant. *In re State ex rel. Munk*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, orig. proceeding) ("We conclude that requiring the State to conduct criminal history searches exceeds the requirements of *Brady* because the State would be required to independently seek out exculpatory evidence on behalf of the defendant.").

---

[9] The lone exception is access to "information obtained for the purpose of diagnosis, examination, evaluation, treatment, or referral for treatment of a child by a public or private agency or institution providing supervision of a child by arrangement of the juvenile court or having custody of the child under order of the juvenile court." TEX. FAM. CODE § 58.304(b)(23); *see also id.* § 58.306(i)(2) (listing, among others, "the county juvenile probation department" as having such access, but not listing the prosecuting attorney).

The court explained that mere access to information does not equate to knowledge or possession for purposes of *Brady*:

> Individuals have access to a plethora of information (and images) via the internet, including matters that are inherently criminal in nature. However, the fact that one may have access to information does not mean that the person has possession of all information that he or she could potentially access. Furthermore, access to information does not equate to knowledge that the information exists, which is a component under *Brady*.

*Id.* at 693. Here, as there, *Brady* only obligates "the prosecutor [and] other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case"—that is, the prosecutorial team—to disclose materials stored in a shared database "that the State already has in its possession or . . . that the State may obtain in the future by its own volition." *Id.* at 694.

Ultimately, rather than attempting to decide what role Juvenile Services typically plays in relation to gathering and controlling documents used to prepare social history reports, "a case-by-case analysis is better suited for determining whether an individual is deemed part of the prosecution team pursuant to the principles of agency law." *Avila*, 560 F.3d at 308 (citing *Antone*, 603 F.2d at 570); *cf. Harm v. State*, 183 S.W.3d 403, 407–08 (Tex. Crim. App. 2006) (finding that "CPS could not have been working with the prosecution or at its behest," in part because "the tardily produced reports were created in the course of a[] non-criminal investigation" that was "within the duties of CPS to protect the welfare and safety of the children of Texas"). While nothing in your request indicates that Juvenile Services acted as a member of the wider prosecutorial team under *Brady*, that question requires the resolution of facts and thus falls "outside the purview of an Attorney General opinion." Tex. Att'y Gen. Op. No. KP-0452 (2023) at 3.

**Family Code section 54.04 requires that a child's attorney be given access to documents appended to a social history report but does not apply to documents held by Juvenile Services but not provided to the juvenile court.**

Your second question asks broadly about a juvenile court's role regarding confidential and privileged documents. Request Letter at 2; Brief at 3. As examples, you reference "mental health information, information protected by [the Health Insurance Portability and Accountability Act], attorney/client privileged information, and attorney work product." *Id.* In briefing this issue, you discuss Family Code subsection 54.04(b) and quote the provision's language that "the court shall provide the attorney for the child and the prosecuting attorney with access to all written matter to be considered by the court in disposition." Brief at 8–9 (quoting TEX. FAM. CODE § 54.04(b)). You continue that "[t]he court may order counsel not to reveal items to the child or the child's parent, guardian, or guardian ad litem" under certain circumstances. *Id.* at 9 (quoting TEX. FAM. CODE § 54.04(b)). You conclude that "even though some of the records at issue are the juvenile's own, some judicial oversight of discovery is required." *Id.*

On its face, subsection 54.04(b) pertains to the "written reports from probation officers" considered by a juvenile court at the disposition hearing. TEX. FAM. CODE § 54.04(b). To the extent your request involves such written reports, including attachments, that have been provided to and will be considered by the juvenile court, subsection 54.04(b) sets forth the court's role. The court must provide to the child's attorney all documents appended to the social history report but may order that attorney not to reveal documents where "such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future." *Id.*

Yet your second question appears to implicate documents that Juvenile Services does *not* include with the social history reports provided to a juvenile court. *See* Request Letter at 1–2 (referencing in the subject line "records in the possession of the local juvenile justice agency" and referring to Juvenile Services as a "non-law-enforcement county agency"). Where that is the case, subsection 54.04(b) has no application because such documents would not constitute "written matter to be considered by the court in disposition." TEX. FAM. CODE § 54.04(b). However, as explained below, we agree with your observation that "a child's attorney is not without other recourse" to obtain documents from Juvenile Services. Brief at 10.

**A child's attorney may subpoena Juvenile Services for documents underlying a social history report pursuant to Code of Criminal Procedure article 24.02.**

In briefing your second question, you propose that a child's attorney should "seek an order from the court directing Juvenile Services to provide underlying documents and written materials to the court for its *in camera* inspection." *Id.* You also suggest that a child's attorney may subpoena and receive documents directly from Juvenile Services pursuant to the Rules of Civil Procedure. *Id.* While we agree that such documents may be subpoenaed, the authority to do so is instead rooted in the Code of Criminal Procedure. *See supra* note 5 (citing TEX. FAM. CODE § 51.17(b); *In re M.P.*, 220 S.W.3d 99, 112–13 (Tex. App.—Waco 2007, pet. denied)) ("To exercise the limited right of confrontation we have recognized herein, a juvenile may subpoena any necessary witnesses to challenge the accuracy of any information contained in any reports to be offered under section 54.04(b).").

Code of Criminal Procedure Chapter 24 generally authorizes a party to "obtain a subpoena to secure the presence of witnesses whose testimony is material to its case." *In re State ex rel. Wadsworth*, 653 S.W.3d 759, 765 (Tex. App.—San Antonio 2022, no pet.). Relevant here, a subpoena duces tecum may specify evidence for the witness to bring and produce in court. TEX. CODE CRIM. PROC. art. 24.02. Unlike subpoenas under the Civil Rules, "[a]rticle 24 of the Texas Code of Criminal Procedure does not authorize a similar type of unsupervised production unconnected to a set hearing." *In re State*, 599 S.W.3d 577, 593 (Tex. App.—El Paso 2020, no pet.). Instead, a criminal subpoena "only goes so far as to secure the availability of evidence in connection with a court hearing." *Id.* at 594.

Such subpoenas should only be used "as an aid to discovery based upon a showing of materiality and relevance." *Luvano v. State*, 183 S.W.3d 918, 924 (Tex. App.—Eastland 2006, no pet.). Where documents are also favorable to the child, they must be disclosed "unless the documents are privileged or confidential." *McDaniel v. State*, No. 10-20-00091-CR, 2021 WL

3667237, at *2 (Tex. App.—Waco Aug. 18, 2021, no pet.) (mem. op., not designated for publication) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60–61 (1987)). If privileged or confidential, a court must conduct an in-camera inspection of the documents before disclosure. *In re Moore*, 615 S.W.3d 162, 169 (Tex. App.—Austin 2019, no pet.) (establishing "that when a party seeks to compel the production of confidential or privileged documents, the trial court is required to conduct an in camera inspection of those documents prior to ordering their disclosure").

Although not required, in-camera inspection is also available to resolve other disputes about the disclosure of subpoenaed documents. *See In re City of Lubbock*, 666 S.W.3d 546, 555–56 (Tex. Crim. App. 2023) ("Trial courts can inspect evidence in camera when there is a dispute about whether such evidence can be disclosed."). For example, Juvenile Services may seek to quash the subpoena. *See Martin v. Darnell*, 960 S.W.2d 838, 840–41 (Tex. App.—Amarillo 1997, no pet.) ("Although the Code of Criminal Procedure does not specifically authorize the quashing of subpoenas in criminal cases, trial courts' exercise of that power has been recognized as proper."). Where a subpoena recipient moves to quash, the court may review the subpoenaed documents in camera to determine whether to grant the motion. *See, e.g.*, *Wilks v. State*, No. 05-18-00184-CR, 2019 WL 2498681, at *7 (Tex. App.—Dallas June 17, 2019, pet. ref'd) (mem. op., not designated for publication) (upholding the trial court's grant of a motion to quash based on relevancy after conducting in-camera review).

Accordingly, a court would likely conclude that a child's attorney may issue a subpoena duces tecum to an individual at Juvenile Services in possession of confidential or privileged documents. A court would likely further conclude that privileged or confidential documents favorable to the child are subject to mandatory in-camera review before disclosure while a court may review any other subpoenaed documents in-camera pursuant to deciding a motion to quash.

# S U M M A R Y

At a disposition hearing conducted under Family Code section 54.04, a juvenile court may consider a social history report prepared by a juvenile probation officer. A local juvenile probation department is not "the state" for purposes of Code of Criminal Procedure article 39.14 and not subject to disclosure duties on that basis. Code of Criminal Procedure article 2A.209 does not require a local juvenile probation department to disclose documents used to prepare social history reports to the prosecution. Determining whether such documents must be disclosed under *Brady v. Maryland* is a fact-specific inquiry that cannot be addressed in an Attorney General opinion.

Family Code subsection 54.04(b) requires that a child's attorney be given access to documents appended to a social history report. Subsection 54.04(b) does not apply to documents that are not considered by a juvenile court at the disposition hearing. A child's attorney may subpoena confidential or privileged documents used to prepare a social history report pursuant to Code of Criminal Procedure article 24.02. Such documents are subject to mandatory in-camera review before disclosure if favorable to the child and otherwise to permissive in-camera review in relation to deciding a motion to quash.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

J. AARON BARNES
Assistant Attorney General, Opinion Committee